OPINION OF THE COURT
David Goldstein, J.
The issue is whether the State courts have jurisdiction of a *700 claim for price discrimination under the Robinson-Patman Act (15 USC § 13 et seq.), or whether exclusive jurisdiction lies in the Federal courts.
This is a motion by plaintiff, pursuant to CPLR 3211 (a) (2), to dismiss the first, second and third counterclaims for lack of subject matter jurisdiction. Plaintiff contends that we lack requisite jurisdiction of the third counterclaim to recover for violations of the Federal antitrust laws. In addition, it is argued that, in any event, the Civil Court is without jurisdiction since the amount of each counterclaim ($250,000) exceeds the monetary jurisdiction of this court.
The action was brought to recover for goods sold and delivered by plaintiff to defendant. The answer, inter alla, interposed three counterclaims, the first alleging a conspiracy in restraint of trade, in violation of General Business Law § 340 et seq. (the Donnelly Act), the second for breach of contract, and the third that plaintiff’s acts amounted to price discrimination in violation of both the Robinson-Patman Act and the Donnelly Act.
Insofar as plaintiff contends that the Civil Court lacks jurisdiction over the counterclaims since they seek damages in excess of $25,000, the monetary jurisdiction of this court, the argument lacks merit. CCA 208 (b) provides:
"The court shall have jurisdiction of counterclaims as follows * * *
"(b) Of any counterclaim for money only, without regard to amount.”
Thus, plainly, this court has jurisdiction over the counterclaims, notwithstanding that the amount demanded exceeds the monetary jurisdiction as to claims brought by a plaintiff.
The alternate ground for dismissal, however, does raise a unique issue dealing with the general jurisdiction of our State courts to pass upon claims based upon unlawful price discrimination under the Robinson-Patman Act. At issue is whether the purpose and underlying policy of the Federal legislative scheme mandates that exclusive jurisdiction be vested in the Federal courts.
In 1890, Congress adopted the Sherman Antitrust Act (15 USC § 1). The Sherman Act, however, did not expressly deal with price discrimination. As a result, in 1914, Congress enacted the Clayton Act (15 USC § 12) as a supplement to the Sherman Act, by prohibiting price discrimination in certain circumstances. In 1936, the Clayton Act was amended by the *701 enactment of the Robinson-Patman Act (15 USC § 13), which provided a more comprehensive Federal regulation of price discrimination. *
The private enforcement provision of the Federal antitrust laws, contained in 15 USC § 15 (a), states in part as follows: "Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney’s fee”.
Although the statute does not expressly provide for exclusive Federal jurisdiction, the courts have uniformly construed the legislation as conferring exclusive jurisdiction on the Federal courts in any action to recover damages under the Sherman and Clayton Acts. (Marrese v American Academy of Orthopaedic Surgeons, 470 US 373, 379-380 [Sherman Act]; Vendo Co. v Lektro-Vend Corp., 433 US 623, 632; General Inv. Co. v Lake Shore Ry., 260 US 261, 287 [Sherman and Clayton Acts]; Banana Distribs. v United Fruit Co., 269 F2d 790, 793 [Clayton Act]; Lyons v Westinghouse Elec. Corp., 222 F2d 184, 189 [error to stay Federal action pending disposition of State proceeding under Clayton and Robinson-Patman Acts].)
*702 While none of the reported decisions expressly deals with the viability of a State claim to remedy a Robinson-Patman violation, plainly, since the sections are part of the same statutory scheme (Clayton being an amendment to Sherman and Robinson-Patman being an amendment to Clayton), they "must be construed harmoniously” and, in terms of consistency, with reference to each other (Klein v Lionel Corp., 237 F2d 13, 15). This, it has been held, is necessary to achieve the desired level of uniformity of construction and application, which the Federal courts have deemed critical to give effect to the underlying policy of the Federal antitrust legislation.
In Simpson Elec. Corp. v Leucadia, Inc. (72 NY2d 450), the Court of Appeals considered the underlying basis for exclusive Federal jurisdiction over antitrust claims, in relation to the concurrent jurisdiction which persists as to claims brought under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC §§ 1961-1968). Although RICO had been modeled upon the Federal antitrust laws, neither the language in 15 USC § 15 (a), nor the legislative history, mandated that exclusive jurisdiction be retained by the Federal courts. As was noted in Simpson, certain commentators have opined that, since the antitrust laws deal with national commerce and affect the national economy in terms of limitations placed upon freedom of contract, uniformity is of critical significance (supra, at 457-458, 460). Concluding that the creation of a private right of action did not automatically vest exclusive jurisdiction in the Federal courts, as in antitrust claims, the Simpson court held that the State courts had concurrent jurisdiction over RICO claims.
Similarly, in Capital Tel. Co. v Pattersonville Tel. Co. (81 AD2d 970, 971, affd 56 NY2d 11), it was recognized that, as to Federal antitrust claims, "jurisdiction lies exclusively with the Federal courts.” (See also, Theatre Confections v Andrea Theatres, 126 AD2d 969.)
Although the reported decisions are clear in their direction that State courts may not entertain jurisdiction of an action for monetary or injunctive relief, in response to a Federal antitrust violation, our local courts may pass upon the very same issue, i.e., a claimed violation of Federal antitrust laws, where such is raised as a defense, in contrast to a claim for affirmative relief. In General Aniline & Film Corp. v Bayer Co. (305 NY 479, 484-485), the court observed: "Defendants may, of course, still defend upon the ground that the contract sued *703 upon runs afoul of the antitrust laws and is, therefore, illegal.”
In Lyons v Westinghouse Elec. Corp. (supra), Westinghouse had sued Lyons in State court for breach of contract. In defense, Lyons alleged that Westinghouse violated the Federal antitrust laws and, subsequently, brought suit in the Federal court, claiming, inter alia, violation of the Robinson-Patman Act. Westinghouse prevailed in the State action, which rejected the defense of illegality under the antitrust laws. After entry of an interlocutory judgment in the Federal action, Lyons appealed and obtained a stay of further State court proceedings. The United States Court of Appeals for the Second Circuit dismissed the appeal, vacated the stay and ordered the matter to proceed to trial in the Federal court. It did hold, however, that the State court had requisite jurisdiction to decide the merits of the defense, notwithstanding that, under 15 USC § 15, Lyons could only seek treble damages in the Federal court (supra, at 187, 190).
In City Trade & Indus. v New Cent. Jute Mills Co. (25 NY2d 49), an action for an accounting, defendant had demanded arbitration under the arbitration clause of the contract between the parties. In opposition, plaintiff claimed that the agreement violated the Sherman Act. Special Term found that the agreement was not illegal and directed the parties to proceed to arbitration. The Court of Appeals upheld the exercise of State jurisdiction as follows (supra, at 56): "Nor is there any doubt that State courts have jurisdiction to consider the merits of a claim which alleges that the agreement before the court violates the Sherman Antitrust Act where, as here, the claim is presented for the sole purpose of preventing the commencement of binding arbitration. * * * [A] contrary result — prohibiting a State court from examining a claim of illegality advanced under the Sherman Act — would permit a party to a contract such as plaintiff CTI to circumvent many of the intended benefits of an arbitration agreement merely by alleging that the agreement, in some ambiguous way, constituted an antitrust violation.”
In Andrea Theatres v Theatre Confections (787 F2d 59), defendant had sought an accounting and injunctive relief in State court, whereupon plaintiff commenced a Federal action for damages, based upon alleged violations of the Federal antitrust laws. After Andrea amended its State court answer to assert Federal antitrust violations as an affirmative defense and counterclaim, Confections moved for summary judgment, *704 contending that these issues could not be raised in the State court. Confections then sought to stay or dismiss the Federal action. The United States Court of Appeals for the Second Circuit reversed the District Court’s order, which had granted the motion, observing (supra, at 63): "Although state courts may properly consider federal claims raised as defenses in a state court action, including claims over which federal courts have exclusive jurisdiction * * * they may not grant affirmative relief based on claims for which federal jurisdiction is exclusive. * * * A defendant prevailing on such federal defenses in the state court would still have to return to federal court to seek affirmative relief. Moreover, if a state court rejected such federal defenses it is questionable whether the state defendant would be precluded from asserting them as the basis for affirmative relief in a federal suit.”
Subsequently, the Appellate Division, Fourth Department, stayed the State action, pending resolution of the Federal action, based upon "considerations of comity, orderly procedure, and judicial economy”, which required that the Federal action be tried first (Theatre Confections v Andrea Theatres, 126 AD2d 969, 970, supra). However, eight months later, in another case, the Fourth Department concluded that State courts were without jurisdiction to consider claims and affirmative defenses based upon violations of the Federal antitrust laws (Milwaukee Elec. Tool Corp. v McGrath & Durk, 133 AD2d 535, 536, relying upon Bruce’s Juices v American Can Co., 330 US 743; see also, American Broadcasting-Paramount Theatres v American Mfrs. Mut. Ins. Co., 42 Misc 2d 939, affd 20 AD2d 890, later appeal 17 NY2d 849, cert denied 385 US 931).
Thus, the reported decisions are not free from disagreement, either in terms of the exercise of State jurisdiction over an antitrust defense or the binding nature and preclusive effect of a State determination (compare, Marrese v American Academy of Orthopaedic Surgeons, 470 US 373, supra, with Andrea Theatres v Theatre Confections, supra, and American Broadcasting-Paramount Theatres v American Mfrs. Mut. Ins. Co., supra). Putting aside the issue of collateral estoppel, which is not before the court on this motion, the underlying principle which flows from the foregoing decisions is that State courts are without jurisdiction to pass upon a claim for affirmative relief under the Federal antitrust laws, although the very same court may consider the identical antitrust issue when raised as an affirmative defense. One recent Fourth Depart *705 ment memorandum holds otherwise, rejecting any assertion of jurisdiction, even as to defenses (Milwaukee Elec. Tool Corp. v McGrath & Durk, supra), but is in clear conflict with the overwhelming weight of authority — both State and Federal.
In my view, there is no practical or rational basis to draw the distinction which has been judicially carved out in terms of State court jurisdiction over antitrust issues. In principle, the very same national economic interests are affected, whether the antitrust issue is raised as a defense or as a claim for affirmative relief. The only real difference is that, in the former, the determination results in dismissal of the adverse claim, whereas, in the latter, disposition would carry with it a monetary award or necessary injunctive relief, assuming that the other requisites for such equitable relief are present.
In either case, no special expertise is needed to interpret and apply the Federal antitrust provisions and the cases decided thereunder. Subject to other jurisdictional considerations, this should be able to be done either in Federal or in State court. If our State courts may determine the intricate issues raised in an antitrust defense, and the overwhelming weight of authority is that they may do so, logically, the very same courts should have the authority and jurisdiction to award monetary relief in response to an antitrust violation. While I am bound to and do adhere to controlling precedent on the issue, which mandates the jurisdiction be declined here, in my view, the underlying issue ought to be reexamined on an appellate level, after a full exploration of the issue on the merits, and with a view toward adoption of a rule which takes cognizance of the ability of our judicial system to adapt to the changing needs and complexities of society and, in particular, the changes in business patterns, associations and competition. Plainly, to effect such a change in practice at this judicial level and on this record, without adequate briefs which fully explore the issue, would be inappropriate.
Accordingly, plaintiff’s motion is granted only to the extent that so much of the third counterclaim as seeks to recover for violations of the Robinson-Patman Act is dismissed. In all other respects, the motion is denied.

 New York State adopted its own version of the Sherman Act, which, over the years, has undergone numerous amendments and is now known as the Donnelly Act (General Business Law § 340 et seq.). The statute, also known as the "Little Sherman Act”, is construed in light of Federal precedent and is given a different interpretation than the Federal legislation only where State policy, divergent statutory language or legislative history warrant that such be done (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 335). The Donnelly Act, modeled after but broader than the Sherman Act, contains no counterpart of either the Clayton or Robinson-Patman Act amendments prohibiting price discrimination and, thus far, our courts have been reluctant to construe the Donnelly Act so broadly, preferring instead to await remedial legislation (State of New York v Mobil Oil Corp., 38 NY2d 460, 463-464; International Serv. Agencies v United Way, 108 Misc 2d 305, 307; Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 340, at 519). Price discrimination may still be actionable under the Donnelly Act if its effect is to restrain competition, as was the case under the Sherman Act before the Clayton and RobinsonPatman amendments (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 19; Givens, op. cit.). At this juncture, however, the issue of whether defendant has a cognizable cause of action for price discrimination under the Donnelly Act has not been raised and is not before the court. Therefore, the court has not considered the underlying merits of the claimed violation of the Donnelly Act in this case.