OPINION OF THE COURT
Smith, J.
The primary issue on this appeal is whether the Grand Jury was properly instructed that any allocation of customers by the defendants was per se illegal under the Donnelly Act (General Business Law §§ 340, 341) or whether a "rule of reason” should be applied to the facts presented.
The indictment charging antitrust violations stemmed from the activities of competing waste carting firms. The evidence presented to the Grand Jury disclosed that defendant A-l Compaction, Inc. (A-l) was a waste carter which made commercial and industrial garbage collections in the metropolitan New York area. It had a Connecticut subsidiary, defendant *169 American Disposal Services, Inc. (ADS). Defendant Alfred Rattenni was the majority shareholder and principal officer of A-l. Defendant G&G Waste Systems, Inc. (G&G) was a waste carter based in Connecticut. It had a New York subsidiary, defendant Wasteway Carting Corp. (Wasteway). The shareholders and officers of G&G were Frank Giannattasio, Sr., and his sons, defendant Frank, Jr., and John.
In 1981, G&G began a carting business in areas of Connecticut, including Greenwich, Stamford, Darien, Norwalk and Westport. In 1984, ADS was formed in order to compete with G&G and other carters in southern Connecticut. The competitive practices of both ADS and G&G resulted in complaints to the offices of the Attorney General of Connecticut and New York, complaints to the office of the District Attorney of Westchester County, and civil litigation between these defendants.
Beginning in December 1987, defendant Wasteway solicited and serviced customers of A-l in Yonkers, New York. The evidence before the Grand Jury was that some of A-l’s customers were contacted by Waste way and considered breaking contracts with A-l but that A-l either retained or got back some of these customers through matching prices, underbidding or suing. The evidence indicated further that Wasteway’s efforts to establish a viable business in Yonkers were unsuccessful although it did establish accounts with about 100 customers, 75% being former A-l customers. Wasteway attributed this failure to its inability to obtain dumping rights in Westchester, harassment by local law enforcement officials, and lawsuits against it.
The indictment against defendants grew out of Wasteway’s decision to cease doing business in Yonkers and New York State. At a first meeting between the principals of A-l and G&G prior to June 24, 1988, defendant Rattenni was solicited but he declined to purchase Wasteway.
A second meeting was held on or about June 24, 1988. Present for A-l and ADS were Rattenni, Ralph Cerretta, the manager of ADS, and Andrew Bowman, an attorney. Present for G&G and Wasteway were the three Giannattasios and their attorney, Joseph Richichi. As the result of the meeting, a letter of intent was drawn up but never signed. Instead, Rattenni agreed to cease serving about 55 "front end container” customers in Norwalk, Connecticut, and gave G&G and Wasteway a list of those ADS customers. ADS, however, *170 continued to compete for "compaction and roll-off work” in Norwalk. The Giannattasios agreed to cease doing business in Yonkers, and Rattenni was given a list of approximately 100 Wasteway customers in Yonkers. Thus, ADS relinquished a portion of its business in Norwalk and Wasteway ceased doing business in Yonkers altogether. Neither ADS nor Wasteway assumed the contracts of the other but entered into new contracts with customers, some at prices substantially higher than before the agreement to allocate customers.
After the presentation of evidence relevant portions of the Donnelly Act were read to the Grand Jury along with the following further instructions:
"Now, the Donnelly Act makes illegal only combinations and conspiracies which unreasonably restrain trade and competition. It is the law, however, and I do instruct you that an arrangement, combination or conspiracy among actual or potential competitors to divide and allocate customers is, without more, an unreasonable restraint of trade which violates the Donnelly Act.
"This means that if there was such a conspiracy, it does not matter whether the allocation of customers was based on any business justification. You need not determine whether an agreement to allocate customers is reasonable or unreasonable * * *
"A conspiracy to allocate customers is an agreement or mutual understanding between two or more actual or potential competitors not to compete for the business of particular customers. For example, customer allocation exists where two or more actual or potential competitors agree that each of them will not service or solicit specific customers that they have agreed should be serviced by the other.
"A business, however, has the right to select its customers entirely on its own and to sell its services to whomever it chooses. Likewise, a business may decide not to solicit or sell its services to a customer, provided that the decision results from an independent business judgment and not from an understanding with a competitor.” (Emphasis supplied.)
The Grand Jury voted to indict all six defendants. It *171 charged them in count one of the indictment with the crime of combination in restraint of trade and competition in violation of sections 340 and 341 of the General Business Law.[1] Specifically, the defendants were charged with knowingly and intentionally entering into "a contract, agreement, arrangement, combination and conspiracy * * * to divide and allocate among themselves certain customers for garbage collection services in Westchester County, New York, Putnam County, New York, and the State of Connecticut.”
On defendants’ motion, Supreme Court dismissed count one of the indictment, concluding that the Grand Jury had been improperly instructed that any allocation of customers was a per se violation of the Donnelly Act, and that under the proper "rule of reason” standard the evidence was legally insufficient to sustain the indictment. The Appellate Division reversed and reinstated count one, holding that the proper charge to the Grand Jury was a per se charge and that the evidence before the Grand Jury was legally sufficient. We affirm.
The Donnelly Act declares, "Every contract, agreement, arrangement or combination whereby * * * [competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained * * * to be against public policy, illegal and void” (General Business Law § 340 [1]). The Donnelly Act was modelled on the Federal Sherman Act of 1890[2] (State of New York v Mobil Oil Corp., 38 NY2d 460, 463), and thus we have observed that State antitrust law "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result” (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 335).
While most trade practices are analyzed under a "rule of reason” standard — that is, it must be shown that under the circumstances there is an unreasonable restraint of trade— some activities are deemed so pernicious to competition that *172 they are found to be per se unreasonable (Northern Pac. Ry. Co. v United States, 356 US 1, 5). Among these are price fixing and division of markets (id.).
The charge to the Grand Jury that an allocation of customers was a per se violation of the Donnelly Act was proper and the Appellate Division’s order should be affirmed. Federal law is clear on the issue. In United States v Topco Assocs. (405 US 596), for example, the Supreme Court, rejecting a decision by a Federal District Court that a case was governed by a "rule of reason”, held an agreement and conduct analogous to that charged here was a per se violation of the Sherman Act. There, Topeo, an association of approximate 25 small and medium-sized regional supermarket chains operating in 33 States, entered into agreements with its members to sell Topco-controlled brands only within a given territory and to refrain from selling them in other territories. The Supreme Court stated, "[o]ne of the classic examples of a per se violation of [the Sherman Act] is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition” (405 US, at 608).
More recently, the Supreme Court reiterated its position that an allocation of markets was a per se violation of the Sherman Act in Palmer v BRG of Ga. (498 US 46). There, BRG of Georgia, Inc. and Harcourt Brace Jovanovich Legal and Professional Publications both offered Bar review courses in the State of Georgia. The two entities agreed, among other things, that Harcourt would not compete in Georgia and BRG would not compete outside of Georgia. The Supreme Court found this agreement a per se violation of the Sherman Act (498 US, at 49-50).
While defendants argue that we should reject the per se rule under the Donnelly Act insofar as it applies to customer and territory allocation agreements, they have presented no persuasive reason grounded in statutory language, legislative history or policy for us to depart from the Supreme Court’s interpretation of the Sherman Act (see, Anheuser-Busch, Inc. v Abrams, 71 NY2d, at 335). Accordingly, we agree with the Appellate Division that the Grand Jury was properly instructed.
Defendants’ claim that the Giannattasios were not viable competitors in Westchester and were going out of business there irrespective of any agreement to allocate customers does not render the jury charge erroneous. The Grand Jury was *173 specifically required to find that the firms were "actual or potential competitors.” Should the People fail to prove at trial that the firms were actual or potential competitors, of course, defendants may be acquitted.
Similarly, defendants’ claim that what occurred was not an unlawful customer allocation agreement but merely the sale of a business with an ancillary covenant not to compete (see, Purchasing Assocs. v Weitz, 13 NY2d 267, 271) is a factual claim that may be presented at trial. However, that argument does not undermine the validity of the indictment.
Finally, we agree with the Appellate Division that the evidence before the Grand Jury was legally sufficient to sustain the indictment.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Kaye and Judges Simons, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. The second count of the indictment charged the defendant Giannattasio with perjury. On July 10, 1990, a jury found him not guilty of the charge.

. The Sherman Antitrust Act, 15 USC § 1, reads, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal”.