[597 NYS2d 302]

X.L.O. CONCRETE CORP., Appellant-Respondent, v RIVERGATE
CORPORATION, Respondent-Appellant.

First Department, May 4, 1993

APPEARANCES OF COUNSEL

*Lester Gulitz,* Peekskill, for appellant-respondent.

*Raymond A. Bragar* of counsel, New York City *(Beth A. Willensky* with him on the brief; *Bragar & Wexler, P. C.,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

CARRO, J.

On May 12, 1983, plaintiff X.L.O. Concrete Corp. (XLO), as subcontractor, entered into a written contract with defendant, The Rivergate Corporation, as general contractor, for construction of the concrete superstructure of a project located at

401-429 East 34th Street in Manhattan, for the price of $16,300,000. By reason of certain work changes the contract price was adjusted to $16,544,125.07. XLO performed the work agreed to under the contract, and in an action commenced on or about May 20, 1991, alleging causes of action for breach of contract, account stated and unjust enrichment, sought payment of $844,125.07 due and owing since May 25, 1988.

Some years prior to the execution of the contract, the "Commission" of La Cosa Nostra, a nationwide criminal society which operates through local organizations known as "families," organized an arrangement (the Club) with the seven concrete superstructure construction companies working in New York, whereby the Commission would designate which contractor would get any particular construction contract worth over $2 million, and the designated contractor would be required to pay the Commission 2% of the contract price in exchange for "labor peace". Any contractor who did not join the Club or comply with its rules was threatened with physical harm, disruption of supplies, and labor unrest, even to the point of driving a company out of the concrete construction business. *(See, United States v Salerno,* 868 F2d 524, 529, *cert denied* 493 US 811.)

XLO resisted the threats of the Commission until it was the last concrete superstructure contractor doing business in New York City which was not a member of the Club, but eventually capitulated to the threats and joined the Club in May of 1981. The Rivergate project was allocated to XLO pursuant to the aforesaid arrangement, and XLO paid the required 2% of the contract price to Ralph Scopo, then the president and business manager of the District Council of Cement and Concrete Workers, Laborers International Union of North America, a member of the Colombo family who, along with others, supervised the Club on behalf of the Commission. Both XLO and Rivergate negotiated the contract for the project with knowledge of the Club and its rules.

Rivergate's answer set forth affirmative defenses urging that the complaint should be dismissed because the contract sued upon violated the Donnelly Act (New York General Business Law § 340 *et seq.)* and the Sherman Antitrust Act (15 USC § 1), and counterclaimed for damages and attorney's fees in amounts to be determined at trial, under General Business Law § 340 (5) (first counterclaim) and the Clayton Act (15 USC § 15) (second counterclaim). A third counterclaim sought attorney's fees and costs under the contract. XLO responded to the

counterclaims with an assertion that they were barred by the Statute of Limitations.

XLO moved for summary judgment dismissing Rivergate's first and second counterclaims on the ground that they were time barred, and Rivergate cross-moved for partial summary judgment dismissing the complaint. The IAS Court dismissed the complaint, concluding that the contract was illegal because it was an integral part of a conspiracy that eliminated competition in violation of the Donnelly and Clayton Acts (from which XLO has appealed). The court also dismissed Rivergate's first two counterclaims as time barred under the four-year limitation of action provisions in General Business Law § 340 (5) and 15 USC § 15b, and dismissed the third counterclaim for attorney's fees and costs pursuant to the contract on the ground that the contract was void (from which Rivergate has cross-appealed).

■ XLO's complaint should be reinstated. We observe first that the Donnelly Act (General Business Law § 340 *et seq.)* was modelled after the Sherman Antitrust Act, and "should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result [citations omitted]." *(Anheuser-Busch, Inc. v Abrams,* 71 NY2d 327, 335.) We find no difference in the language of the Sherman and Donnelly Acts, or the public policies sought to be protected therein, which suggest that Federal precedents should not govern this appeal. While both Acts would unquestionably render void the agreement, arrangement or combination in restraint of trade that formed the basis of the Club *(People v Rattenni,* 81 NY2d 166), neither Act *in haec verba* renders void every contract for services or goods entered into by a person or entity which is a member of such illegal arrangement or combination.

The determinative question is whether the alleged illegality is collateral to the contract that is sought to be enforced, viz., as here applicable, whether the contract can be proved without any reference to the arrangement whereby XLO became a member of the Club *(Connolly v Union Sewer Pipe Co.,* 184 US 540, 547-550). In the *Connolly* case, the defendants sought to avoid liability on promissory notes given to purchase pipe on the ground that the seller was part of an illegal combination with other pipe manufacturers to set prices in restraint of trade. The Supreme Court refused to allow this as a defense to the action, holding as here pertinent: "The buyer could not

refuse to comply with his contract of purchase upon the ground that the seller was an illegal combination which might be restrained or suppressed in the mode prescribed by the act of Congress; for Congress did not declare that a combination illegally formed under the act of 1890 should not, in the conduct of its business, become the owner of property which it might sell to whomsoever wished to buy it. So that there is no necessary legal connection here between the sale of pipe to the defendants by the plaintiff corporation and the alleged arrangement made by it with other corporations, companies and firms. The contracts under which the pipe in question was sold were, as already said, collateral to the arrangement for the combination referred to, and this is not an action to enforce the terms of such arrangement. That combination may have been illegal, and yet the sale to the defendants was valid." *(Supra,* at 551.)

In *Kelly v Kosuga* (358 US 516), the petitioner, an onion grower, purchased unwanted onions from the respondent on constraint of the respondent's threat that if petitioner and other onion growers did not purchase onions from the respondent, the respondent would dump large quantities of stored onions on the market for the purpose of depressing the futures and cash market prices of onions. The petitioner interposed as a defense that the sale was made pursuant to and as an indivisible part of an agreement which violated section 1 of the Sherman Antitrust Act, which defense the District Court struck as insufficient in law. The Supreme Court affirmed, holding that the completed agreement to sell onions at a fair price was divisible from the agreement to fix prices, and constituted "an intelligible economic transaction in itself" (358 US, *supra,* at 521). The Court in *Kelly* expressed its rationale as follows: "Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the [Sherman] Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.' " (358 US, *supra,* at 520-521, quoting *Continental Wall Paper Co. v Voight & Sons Co.,* 212 US 227, 271 [dissenting opinion]; *see also, Viacom Intl. v Tandem Prods.,* 526 F2d 593 [2d Cir 1975], comprehensively analyzing a series of Supreme Court opinions expressing antipathy towards the interposition of antitrust defenses in contract actions.)

Applying these precedents to this appeal, we conclude that

XLO's membership in the Club was collateral to the contract it negotiated and entered into with Rivergate, and that the contract and its performance can be proved without reference to the illegal arrangement known as the Club, i.e., that the contract constitutes an intelligible economic transaction in itself. If the trial court enforces the contract, it will not be enforcing the precise conduct made unlawful by the Sherman and Donnelly Acts, whereas our permitting Rivergate's anti-trust defenses to stand would allow Rivergate to obtain for nothing, those services and materials furnished by XLO that were valued under the contract in the amount of $844,125.07. In principle, if Rivergate's position were to be sustained, Rivergate could have avoided payment of the *entire* contract price of $16,544,125.07 if partial payments had not been made to XLO, a result even more Draconian than the one reached in the judgment below.

■ Rivergate, on its cross appeal, appealed only from the order dismissing its counterclaims, as limited by the cross notice of appeal, and not from the final judgment. The appeal from the order abates, but the cross appeal may nevertheless be deemed taken from the final judgment *(Fendt Finding Co. v Private Brands,* 182 AD2d 548, 550; Chase Manhattan Bank v Roberts & Roberts, 63 AD2d 566). We disagree with the IAS Court's determination that the counterclaims based upon the negotiations leading up to the execution of the contract do not arise from the same transaction or series of transactions that formed the basis for XLO's causes of action in the complaint (CPLR 203 [d]; *Matter of SCM Corp. [Fisher Park Lane Co.],* 40 NY2d 788), and accordingly, the counterclaims should be reinstated to the extent of the demand in the complaint. With respect to the second counterclaim, although the courts have uniformly construed the Sherman and Clayton Acts as confer-ring exclusive jurisdiction on the Federal courts in any action to recover damages under those Acts *(see, Jack's Cookie Co. v Du-Bro Foods,* 145 Misc 2d 699, 701), XLO did not assert this principle below or on the appeal, and we accordingly will not undertake to apply it.

The judgment of the Supreme Court, New York County (William J. Davis, J.), entered March 6, 1992, should be modified, on the law, without costs, to reinstate plaintiff XLO's complaint, and to reinstate defendant Rivergate's counter-claims to the extent of the demand in the complaint, and as so modified, affirmed.

MURPHY, P. J., ROSENBERGER and ASCH, JJ., concur.

Order and judgment of the Supreme Court, New York County, entered on March 4, 1992 and March 6, 1992, respectively, are modified, on the law, without costs, to reinstate plaintiff XLO's complaint, and to reinstate defendant Rivergate's counterclaims to the extent of the demand in the complaint, and as so modified, affirmed.