OPINION OF THE COURT
 

 Ciparick, J.
 

 The question presented in this action for breach of contract, account stated, and unjust enrichment is whether interposition of an antitrust illegality defense under the Donnelly Act (General Business Law § 340
 
 et seq.)
 
 prevents enforcement of the contract between these parties as a matter of law. We conclude that material questions of fact exist which preclude granting summary judgment on defendant’s antitrust defense and thus affirm the Appellate Division order which reinstated plaintiff’s complaint.
 

 I
 

 The parties, plaintiff X.L.O. Concrete Corp., as subcontractor, and defendant Rivergate Corporation, as general contractor, entered into a written contract on May 12, 1983 for construction of the concrete superstructure and fills of a project located in Manhattan. Plaintiff fully performed its obligations under the contract and sought payment of
 
 *516
 
 $844,125.07, the balance due and owing. Defendant refused to pay on the ground that the contract was an integral feature of an extortion and labor bribery operation known as the "Club”.
 

 The "Club” was an arrangement between the "Commission” of La Cosa Nostra, a ruling body comprised of four of the five New York City organized crime family bosses, and seven concrete construction companies operating in New York City, and the District Council of Cement and Concrete Workers, Laborers International Union of North America
 
 (see, United States v Salerno,
 
 868 F2d 524, 528-529,
 
 cert denied
 
 493 US 811 [describing the Club and its workings in fuller detail]). The Commission decided which concrete companies would be permitted to undertake construction jobs in New York City worth more than $2 million dollars; contractors who took jobs over $2 million were required to pay the Commission 2% of the contract price for guaranteed "labor peace”. The Commission not only approved which companies got which jobs, but also rigged the bidding to ensure that the designated company would submit the lowest bid. The Commission enforced compliance through threatened or actual labor unrest or violence. In May 1981, plaintiff became the last concrete contractor doing business in New York City to join the Club.
 

 The Rivergate project was allocated to plaintiff by the Commission on the assumption that it would not exceed $15 million. Plaintiff’s principal, James Costigan, paid the 2% "labor peace” fee to Ralph Scopo, the Commission’s representative and the business manager and president of the District Council of Cement and Concrete Workers. Plaintiff then negotiated the terms of the contract with defendant. The parties agreed on a figure of $16,300,000 (later adjusted to $16,544,125.07).
 

 The contract price exceeded the amount approved by the Commission, and Scopo, acting on behalf of the Commission, approached Costigan and requested that his company abandon the project. Costigan refused, arguing that the Commission had not allocated his company any work in over 18 months. Scopo carried Costigan’s message back to the Commission and the Commission decided to permit plaintiff to work on the project. Costigan subsequently gave Scopo a $50,000 "gift” for speaking favorably on plaintiff’s behalf to the Commission.
 

 The record indicates that defendant negotiated the contract with full knowledge of the Club and its rules. Plaintiff completed the work agreed upon under the contract and, upon defendant’s refusal to pay, commenced this action.
 

 
 *517
 
 Defendant interposed in its answer a "third affirmative defense and first counterclaim” urging dismissal of the complaint on the ground that the contract was an integral element of an antitrust conspiracy in violation of the Donnelly Act. Defendant’s "fourth affirmative defense and second counterclaim” sought recovery of monetary damages for injuries sustained allegedly as the result of plaintiffs violations of the Sherman Antitrust Act (15 USC § 1). A third counterclaim sought attorney’s fees and costs under the contract.
 

 Plaintiff moved for summary judgment dismissing defendant’s first and second counterclaims on the ground that they were time-barred, and defendant cross-moved for partial summary judgment dismissing the complaint. Supreme Court granted defendant’s motion for summary judgment dismissing the complaint, and additionally dismissed defendants’ first two counterclaims as time-barred and the third counterclaim on the ground that the contract was void. The Appellate Division modified the order and judgment of Supreme Court to the extent of reinstating plaintiffs complaint. The Appellate Division also reinstated defendant’s counterclaims "to the extent of the demand in the complaint”, and as so modified, affirmed. This Court now affirms.
 

 II
 

 Defendant’s main contention on this appeal is that the contract at issue is so integrally related to an antitrust conspiracy in violation of the Donnelly Act that it is void and unenforceable as a matter of law. We reject this contention, concluding that outstanding material issues of fact exist.
 

 The interposition of antitrust defenses in contract actions is not favored
 
 (see, Kelly v Kosuga,
 
 358 US 516, 518). The concern is that "successful interposition of antitrust defenses is too likely to enrich parties who reap the benefits of a contract and then seek to avoid the corresponding burdens”
 
 (Viacom Intl. v Tandem Prods.,
 
 526 F2d 593, 599). Nevertheless, antitrust defenses will be upheld in cases where a court’s judgment would result in enforcement of the "precise conduct made unlawful by the Act”
 
 (Kelly v Kosuga,
 
 358 US 516, 520,
 
 supra; see, Kaiser Steel Corp. v Mullins,
 
 455 US 72, 79). Beyond that point, however, "courts are to be guided by the overriding general policy * * * 'of preventing people from getting other people’s property for nothing when they purport to be buying it’ ”
 
 (Kelly,
 
 358 US, at 520-521,
 
 supra
 
 [quoting
 
 *518
 

 Continental Wall Paper Co. v Voight & Sons Co.,
 
 212 US 227, 271] [Holmes, J., dissenting]). Thus, a contract which is legal on its face and does not call for unlawful conduct in its performance is not voidable simply because it resulted from an antitrust conspiracy
 
 (see, Kelly,
 
 358 US, at 521,
 
 supra; Connolly v Union Sewer Pipe Co.,
 
 184 US 540, 547-550;
 
 Viacom,
 
 526 F2d 598,
 
 supra; but see, Continental Wall Paper,
 
 212 US 227,
 
 supra).
 

 This Court has held that the Donnelly Act, having been modelled on the Federal Sherman Act of 1890, " 'should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result’ ”
 
 (see, People v Rattenni,
 
 81 NY2d 166, 171 [quoting
 
 Anheuser-Busch, Inc. v Abrams,
 
 71 NY2d 327, 335]). Indeed, courts which have considered interposition of antitrust defenses in contract actions have followed the rule and rationale of
 
 Kelly (supra) (see, e.g., Dachowitz v Bergman,
 
 113 Misc 2d 236, 239 [Sup Ct, NY County];
 
 Fleet-Wing Corp. v Pease Oil Co.,
 
 29 Misc 2d 437, 441 [Sup Ct, Erie County],
 
 mod on other grounds
 
 14 AD2d 728;
 
 see also, New York Stock Exch. v Goodbody & Co.,
 
 42 AD2d 556 ["where the antitrust violation is collateral to the main issue in the complaint, it cannot remain as a viable defense”];
 
 Columbia Broadcasting Sys. v Roskin Distribs.,
 
 31 AD2d 22, 25,
 
 affd in part, dismissed in part
 
 28 NY2d 559 [Sherman and Clayton Acts "may not be pleaded in defense of an action for goods sold and delivered or services rendered”]).
 

 We note that the contract sought to be enforced is legal on its face and does not contemplate or require conduct in violation of the antitrust laws in its performance. Moreover, the mere fact that the contract is related to an antitrust conspiracy does not automatically render it unenforceable
 
 (see, Kelly,
 
 358 US, at 521,
 
 supra).
 
 Rather, the critical question is whether the contract is so integrally related to the agreement, arrangement or combination in restraint of competition that its enforcement would result in compelling performance of the precise conduct made unlawful by the antitrust laws
 
 (id.,
 
 at 520). This question we cannot answer on the record before us. Whether the contract was an indivisible, effectuating component of an illegal arrangement that would be consummated by granting the judgment sought in this action is a question that requires further development at trial.
 

 
 *519
 
 The extent to which the contract price is excessive and discriminatory and fails to reflect fair market value at the contract date because of an unlawful attempt to stifle competition is an important issue requiring development. The unlawful use of market power to inflate the contract price, and the resulting anticompetitive effects, must be assessed in determining whether granting the judgment sought "would be to make the courts a party to the carrying out of one of the very restraints forbidden by the [antitrust laws]”
 
 (Kelly,
 
 358 US, at 520,
 
 supra; see also, Continental Wall Paper,
 
 212 US, at 261,
 
 supra).
 

 Additionally, the equities of the parties must be examined. Courts should avoid upholding antitrust defenses in contract cases where doing so would work a substantial forfeiture on one party while unjustly enriching the other
 
 (see, Kelly,
 
 358 US, at 520-521,
 
 supra; Murray Walter, Inc. v Sarkisian Bros.,
 
 107 AD2d 173, 178;
 
 see also,
 
 Comment,
 
 The Defense of Antitrust Illegality in Contract Actions,
 
 27 U Chi L Rev 758, 768-769 [the strongest fear held by courts in contract actions involving antitrust illegality defenses is the possibility of forfeiture and unjust enrichment]). A relevant consideration is whether sustaining the illegality defense would render the contract void in its entirety or whether recovery could still be had on a quantum meruit basis. Additionally, the relative culpability, bargaining power, and knowledge of the parties to the contract should also be considered in assessing the possibility of unjust enrichment.
 

 Finally, the public policy in favor of frustrating or discouraging unlawful schemes such as the Club must not be deprecated. However, such a danger is reduced where statutory remedies exist and the State Attorney-General can directly attack the alleged antitrust violations.
 

 In light of our analysis, the Court rejects defendant’s remaining contention that the contract should be held per se illegal under the Donnelly Act.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question should be answered in the affirmative.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur; Judge Titone taking no part.
 

 Order affirmed, etc.