WORLDHOMECENTER.COM, INC., Plaintiff,

v.

PLC LIGHTING, INC., Defendant.

No. 10 Civ. 4092 (RJS).

United States District Court, S.D. New York.

July 5, 2011.

Lawrence Richard Lonergan, Woods & Lonergan LLP, New York, NY, for Plaintiff.

Harry H. Rimm, John Henry Doyle, III, Reed Smith, New York, NY, for Defendant.

## ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff WorldHomeCenter.com, Inc. ("WorldHomeCenter") is an online retailer of home improvement products incorporated in New York. (Am. Compl. ¶¶ 4, 6.) Defendant PLC Lighting, Inc. ("PLC") is a manufacturer and seller of lighting fixtures and accessories incorporated in Delaware. (*Id.* ¶¶ 5, 7.) Plaintiff commenced this action by filing a Complaint in New York Supreme Court, New York County, on April 12, 2010, alleging violations of the New York Deceptive Trade Practices Act and Donnelly Act and seeking declaratory and injunctive relief. Specifically, Plaintiff challenges (1) Defendant's Unilateral Minimum Advertised Pricing ("UMAP") policy, whereby Defendant required Plaintiff to advertise PLC products at a mark-up of not less than 80% (*id.*, Ex. A); and (2) Defendant's warranty disclaimer policy, whereby Defendant allegedly indicated to consumers that it would not honor warranties on PLC products sold by Plaintiff (*id.* ¶ 23). Defendant removed the action to this Court on May 18, 2010 and moved to dismiss the Complaint on February 11, 2011. The motion was fully submitted as of March 25, 2011. Now before the Court is Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As stated on the record during the July 1, 2011 conference, that motion is granted in part and denied in part,

## I. Legal Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Thus, a pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*

## II. Deceptive Trade Practices (N.Y. GBL § 349)

■ Plaintiff's first cause of action alleges that Defendant's policies constitute unfair or deceptive trade practices in violation of New York General Business Law § 349. Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). To state a Section 349 claim, a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.2009). The parties dispute the first two elements of the Section 349 claim— whether the policies at issue are "consumer-oriented" and whether they are materially misleading.

The Amended Complaint alleges that both the UMAP policy and the warranty disclaimer policy constitute false and deceptive trade practices that "unfairly dis-

courage and dissuade consumers from purchasing merchandise from Plaintiff," and "unlawfully penalize" Plaintiff's customers who purchase Defendant's products. (Am. Compl. ¶ 38.) According to Plaintiff, "[i]t is inherently misleading for PLC to publish a warranty disclaimer policy and conceal the fact that the policy plainly contradicts New York State Law," because "[a] reasonable consumer would presume that the UMAP policies and warranty disclaimers are legitimate, and would avoid purchasing discounted products from Homecenter.com to the consumer's own detriment . . . ." (Pl.'s Opp'n 9.)

### A. "Consumer–Oriented" Conduct

■ As a threshold matter, a party must plead "consumer-oriented" conduct in order to claim the benefit of Section 349. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). "The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers." *Wilson v. Northwestern Mutual Ins. Co.*, 625 F.3d 54, 64 (2d Cir.2010). "Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must demonstrate that the acts or practices have a broader impact on consumers at large." *Id.* For that reason, New York courts have recognized that "private contract disputes" between the parties do not "fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741.

■ In this case, the Court finds that the allegations regarding the UMAP policy clearly indicate a private contract dispute rather than "consumer-oriented" conduct. The Amended Complaint alleges that Defendant initiated the UMAP policy (Am.

Compl. ¶ 13), that Defendant "refused to ship and fill orders submitted by Plaintiff ... unless Plaintiff complied with [the] policy" (*id.* ¶ 14), and that Plaintiff has sustained "lasting damages" as a result of the policy, including the loss of substantial profits and damage to its good will and market share (*id.* ¶¶ 18–19). By contrast, the Amended Complaint offers purely conclusory assertions that the UMAP policy is "directed at" consumers, and is therefore "consumer-oriented and likely to mislead a reasonable consumer." (*Id.* ¶ 30.) Such conclusory allegations fail to demonstrate the necessary impact on consumers at large. Rather, the overwhelming focus of the UMAP allegations is a private contractual dispute, which is unique to the parties in this case and therefore beyond the scope of Section 349. *See Harary v. Allstate Ins. Co.,* 983 F.Supp. 95, 98 (E.D.N.Y.1997). Accordingly, the motion to dismiss the Section 349 claim is granted with respect to the UMAP policy.

■ The warranty disclaimer policy is a closer question. The Amended Complaint alleges "upon information and belief" that Defendant "has indicated *to consumers* that it will not honor warranties on Defendant's policies sold by Homecenter.com." (Am. Compl. ¶ 23 (emphasis added).) The Amended Complaint further alleges that the warranty disclaimer policy "has been communicated to other retailers and Plaintiff's prospective customers." (*Id.*) These allegations are admittedly sparse. However, because the "consumer-oriented" requirement is to be liberally construed, *see New York v. Feldman,* 210 F.Supp.2d 294, 301 (S.D.N.Y.2002), the Court finds that the alleged communication directly to consumers is enough to establish "consumer-oriented" conduct at this stage of the litigation. Whether such misinformation was actually funneled to consumers is an issue to be developed in discovery and taken up on summary judgment.

**B. "Deceptive" Acts or Practices**

■■ The next element of a Section 349 claim is the requisite "misleading" act, which the Court regards as the core of the parties' dispute with respect to this cause of action. "Deceptive practices" within the meaning of Section 349 are "acts which are dishonest or misleading in a material respect." *Kramer v. Pollock–Krasner Found.,* 890 F.Supp. 250, 258 (S.D.N.Y. 1995). The New York Court of Appeals has adopted an objective definition of "misleading," under which the alleged act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741. Defendant argues that there is no deceptive conduct here, because the warranty policy was "communicated to other retailers and Plaintiff's prospective customers." (Am. Compl. ¶ 23.) New York law does offer some support for this position, since the general rule is that "[t]here can be no claim for deceptive acts or practices ... when the alleged deceptive practice was fully disclosed." *Watts v. Jackson Hewitt Tax Serv. Inc.,* 579 F.Supp.2d 334, 346 (E.D.N.Y.2008),

However, none of the cases that stand for this general rule had occasion to address policies prohibited by other substantive laws. *See Cohen v. JP Morgan Chase & Co.,* 498 F.3d 111, 126 (2d Cir.2007) ("In none of these cases ... did the courts have occasion to consider fees prohibited by other substantive laws."). New York courts have held that "collecting fees in violation of other federal or state laws may satisfy the misleading element of § 349"—even where those fees were fully disclosed. *Id.* Although illegal fees are not at issue in this case, Plaintiff argues that the warranty disclaimer policy is void and unenforceable pursuant to New York General Busi-

ness Law § 369–b. Thus, Plaintiff argues that although the content of the warranty disclaimer policy was disclosed, consumers were nonetheless deceived regarding the legitimacy and lawfulness of that policy. (Pl.'s Opp'n 9.)

■ This is a close question, but the Court is ultimately persuaded that Plaintiff has the better argument here. Section 369–b clearly states that a warranty "may not be limited by a manufacturer doing business in this state solely for the reason that such merchandise is sold by a particular dealer or dealers," and that "[a]ny attempt to limit the manufacturer's warranty or guarantee for the aforesaid reason is void." N.Y. Gen. Bus. Law § 369–b. According to the Amended Complaint, that is precisely what the alleged warranty disclaimer policy attempted to do-disclaim warranties of products sold by Plaintiff. (Am. Compl. ¶¶ 23–24.) Of course, the Court expresses no opinion as to whether Plaintiff will ultimately prove that allegation, especially since the alleged warranty policy has not been made part of the record. But the Court cannot conclude from the *fact* of disclosure that, as a matter of law, the warranty disclaimer policy is not a deceptive trade practice in violation of Section 349. *See Cohen,* 498 F.3d at 127. *But see WorldHomeCenter.com, Inc. v. Franke Consumer Prods., Inc.,* 10 Civ. 3205(BSJ), Doc. No. 31, 2011 WL 2565284 (S.D.N.Y. June 22, 2011). For that reason, the Court finds that Plaintiff has sufficiently pled the "misleading" act prong of the deceptive trade practices claim.

## C. Actual Injury

Finally, Plaintiff clearly alleges that Defendant's policies "unfairly discourage and dissuade consumers from purchasing merchandise from Plaintiff" and "unlawfully penalize" customers who do purchase Defendant's products from Plaintiff. (Am. Compl. ¶ 38.) Defendant does not appear to contest the sufficiency of these allegations for purposes of the third element of a Section 349 claim, actual injury. Because Plaintiff has sufficiently alleged all three elements, the motion to dismiss the Section 349 claim is denied with respect to the warranty disclaimer policy.

## III. Donnelly Act (N.Y. GBL § 340)

Plaintiff's second cause of action alleges that Defendant's policies constitute vertical price fixing in violation of the New York antitrust statute, known as the Donnelly Act. N.Y. Gen. Bus. Law § 340.

## A. Preemption

■ In response, Defendant argues that the Donnelly Act is preempted by the Sherman Act because the conduct at issue relates to interstate commerce. In order to prevail on the preemption argument, Defendant must overcome the presumption against finding preemption of state law in areas—such as antitrust—traditionally regulated by the states. *See California v. ARC Am. Corp.,* 490 U.S. 93, 101, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989). Federal antitrust law preempts Donnelly Act claims only where "the conduct complained of principally affects interstate commerce, with little or no impact on local or intrastate commerce." *H–Quotient, Inc. v. Knight Trading Grp.,* No. 03 Civ. 5889(DAB), 2005 WL 323750, at *4 (S.D.N.Y. Feb. 9, 2005). In support of its preemption argument, Defendant leans heavily on Judge Scheindlin's recent decision in *Conergy AG v. MEMC Elec. Materials, Inc.,* in which a defendant's motion to dismiss was granted because "the alleged conduct predominantly affects interstate commerce rather than New York commerce." 651 F.Supp.2d 51, 60–62 (S.D.N.Y.2009). Defendant urges the same result here.

■ The Court is not prepared to find preemption on a motion to dismiss in this case. Although the allegations relating to intrastate commerce are admittedly sparse, Plaintiff does allege that Defendant regularly transacts or solicits business in New York (Am. Compl. ¶¶ 2–3), that Plaintiff is a New York corporation (*id.* ¶ 4), and that a substantial part of the events at issue occurred in New York (*id.* ¶ 3). In *Conergy,* by contrast, neither party was a New York corporation, and the complaint alleged no specific impact on New York, no competition with New York producers, and no service to New York customers. *Conergy AG,* 651 F.Supp.2d at 61–62. Here, the mere fact that Plaintiff is an online retailer does not support the conclusion as a matter of law that Defendant's policies had "little or no impact on local or intrastate commerce." *H–Quotient, Inc.,* 2005 WL 323750, at *4. Because discovery is required to resolve the issue of intrastate commercial impact, the Court rejects the preemption argument as a basis for a motion to dismiss the Donnelly Act claim.

### B. Rule of Reason

■ Defendant argues in the alternative that Plaintiff fails to allege facts that would support a Donnelly Act claim under the rule of reason standard. To plead an antitrust violation under the Donnelly Act, Plaintiff must demonstrate that Defendants' conduct constituted anti-competitive activity either *per se* or under the rule of reason. Under a rule of reason analysis, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.,* 551 U.S. 877, 885, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). The *per se* rule treats categories of restraints as necessarily illegal, thus "eliminat[ing] the need to study the rea-sonableness of an individual restraint in light of the real market forces at work." *Id.* at 886, 127 S.Ct. 2705. Thus, the threshold question in evaluating Plaintiff's Donnelly Act claim is whether the rule of reason or the *per se* rule applies.

### 1. The *Leegin* Decision

■ Defendant urges the application of the rule of reason based on the Supreme Court's decision in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877, 127 S.Ct. 2705, 168 L.Ed.2d 623 (2007). In *Leegin,* a retail apparel store brought suit under the Sherman Act against a manufacturer, claiming that the manufacturer had entered into an illegal pricing plan whereby it refused to sell products to retailers that discounted goods below a certain price (so-called "vertical" price-fixing). *See id.* at 883–84, 127 S.Ct. 2705. In ruling for the manufacturer, the Supreme Court held that the rule of reason, not a *per se* rule of unlawfulness, was the appropriate standard to judge vertical price restraints. *Id.* at 899, 127 S.Ct. 2705. Because the Donnelly Act is modeled on the Sherman Act and generally construed in light of federal precedent, *see Granite Partners, L.P. v. Bear, Stearns & Co.,* 17 F.Supp.2d 275, 298 (S.D.N.Y.1998), Defendant argues that the *Leegin* decision should control and that the rule of reason should apply.

Plaintiff counters that vertical price fixing constitutes a *per se* antitrust violation regardless of *Leegin,* because New York courts interpret the Donnelly Act differently than the Sherman Act "where State policy, differences in the statutory language[,] or the legislative history justify such a result." *X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 518, 611 N.Y.S.2d 786, 634 N.E.2d 158 (1994). To justify a divergent result under state law, Plaintiff leans heavily on Section 369–a,

which renders void "[a]ny contract provision that purports to restrain a vendee of a commodity from reselling such commodity at less than the price stipulated by the vendor or producer...." N.Y. Gen. Bus. Law § 369–a. Plaintiff argues that "in view of [Section] 369–a, courts applying New York law should treat vertical price fixing as a *per se* Donnelly Act violation, regardless of the change in federal antitrust law occasioned by the Supreme Court's decision in *Leegin* ...." (Pl.'s Opp'n 13–14.) But Plaintiff supplies no authority for the proposition that Section 369–a justifies such a divergence from federal antitrust precedent. Indeed, the handful of cases in this District that have considered parallel state and federal antitrust claims following the *Leegin* decision appear to assume that *Leegin* applies equally to both. *See Arista Records LLC v. Lime Group LLC,* 532 F.Supp.2d 556, 569, 581 (S.D.N.Y.2007) (Lynch, J.) (citing *Leegin* for the proposition that vertical price restraints "should be evaluated under the traditional rule of reason" standard and subsequently finding that the Donnelly Act claim "overlap[ped] completely" with the federal antitrust claim). In the absence of any authority construing Section 369–a as relevant, much less controlling, with respect to New York antitrust law, the Court declines to adopt such a view. In light of the *Leegin* decision, the Court finds that the rule of reason and not the *per se* rule applies to Plaintiff's Donnelly Act claim.[1]

### 2. Applying the Rule of Reason

▬▬▬ Having determined that the rule of reason applies to Plaintiff's Donnelly Act claim, the Court now proceeds to the implications of that choice. As previously noted, the rule of reason "requires the factfinder to decide whether under all the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition." *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 316 (2d Cir.2008) (internal citation omitted). "In order to plead an antitrust violation under the rule of reason, a plaintiff must allege a relevant market, including both a product market and a geographic market." *Integrated Sys. & Power, Inc. v. Honeywell Intl., Inc.,* 713 F.Supp.2d 286, 298 (S.D.N.Y.2010). Plaintiff also bears the initial burden to show that the challenged behavior "had an *actual* adverse effect on competition as a whole in the relevant market." *Major League Baseball,* 542 F.3d at 317 (internal citation omitted). "Because the antitrust laws protect competition as a whole, evidence that plaintiffs have been harmed as individual competitors will not suffice." *Id.* (internal citation omitted).

Plaintiff has made no real attempt to plead a Donnelly Act violation under the rule of reason analysis. The Amended Complaint contains no allegations regarding the types of lighting products at issue, the geographic boundaries of the market, or the general impact of Defendant's policies in the relevant product or geographic markets. Plaintiff appears to acknowledge as much in its opposition papers, arguing only that "a rule of reason analysis is unnecessary" and not that Plaintiff should prevail under that standard. (Pl.'s Opp'n 13.) Because Plaintiff fails to properly plead a Donnelly Act claim under the rule

---

1. The Court notes that Defendant also urges the application of the rule of reason on the grounds that the UMAP policy governs the *advertised* price rather than the resale price of Defendant's products. (Def.'s Mem. 11–12.) Whether an internet storefront ultimately collapses that distinction is certainly an interesting question. But because the Court finds that the rule of reason applies even to resale price restraints under *Leegin,* the issue of advertised versus resale pricing is beyond the scope of this ruling.

of reason analysis, the motion to dismiss the Donnelly Act claim is granted.

## IV. Declaratory Relief

 Plaintiff's third cause of action seeks declaratory relief pursuant to Section 369–a, Section 369–b, and the Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff urges the Court to declare the UMAP policy void and unenforceable based on Section 369–a and the warranty disclaimer policy void and unenforceable based on Section 369–b. (Am. Compl. ¶¶ 48–49.) But neither of these statutes provides for a private right of action on their face, and Plaintiff has not identified any express provision authorizing a private right of action for violation of either statute. In the absence of a statutory private right of action, the Court will only imply a private right of action where (1) Plaintiff is one of the class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) the creation of such a right would be consistent with the legislative scheme. *See Carrier v. Salvation Army,* 88 N.Y.2d 298, 302, 644 N.Y.S.2d 678, 667 N.E.2d 328 (1996). The third factor, which is generally the "most critical," is determinative here. *Id.* Since the only references to enforcement in Article 24–A of the General Business Law, which contains both Section 369–a and 369–b, are to enforcement by the attorney general and not by private parties, the Court finds that implying a private right of action here would be inconsistent with the enforcement means chosen by the New York legislature. *See* N.Y. Exec. Law § 63(12) (authorizing the Attorney General to apply to the courts for an order enjoining any person from engaging in "repeated fraudulent or illegal acts" or otherwise demonstrating "persistent fraud or illegality" in transacting business). Accordingly, the Court grants the motion to dismiss with respect to declaratory relief.

## V. Injunctive Relief

 Finally, Plaintiff also seeks a preliminary injunction "enjoining and restraining Defendant from implementing and enforcing its UMAP policy." (Am. Compl. ¶ 52.) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council,* 555 U.S. 7, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). A preliminary injunction is an "extraordinary remedy" that should not be routinely granted. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79–80 (2d Cir.1990). The party seeking the injunction carries the burden of persuasion to demonstrate, "by a clear showing," that the necessary elements are satisfied. *See Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997).

 For the reasons stated above, Plaintiff has clearly failed to establish likelihood of success on the merits for its UMAP claims. Moreover, Plaintiff has also failed to demonstrate irreparable harm, the "single most important prerequisite for the issuance of a preliminary injunction." *Rodriguez ex rel. Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1999). The Amended Complaint alleges only that Plaintiff "has lost substantial profits" and experienced a "loss of established business dealings and prospective business opportunities." (Am. Compl. ¶¶ 18, 38, 42.) Because the harm alleged appears to be purely financial and therefore reparable through monetary damages, Plaintiff has failed to allege irreparable injury. Accordingly, the motion to dismiss with respect to injunctive relief is also granted.

## VI. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is DENIED with respect to the Section 349 claim as it pertains to Defendant's alleged warranty disclaimer policy, but GRANTED with respect to (1) the Section 349 claim as it pertains to the UMAP policy, (2) the Donnelly Act claim, and (3) the declaratory and injunctive relief claims. IT IS FURTHER ORDERED THAT the parties shall submit a joint status letter no later than July 22, 2011, updating the Court with respect to the status of settlement discussions and the need, if any, for additional discovery. To the extent that either party wishes to file a motion for summary judgment, that party shall also submit a pre-motion letter pursuant to Rule 2.A of my Individual Practices. The Clerk of the Court is respectfully directed to terminate the motion located at Doc. No. 29.

SO ORDERED.