Antonia M. VALDIVIEZO, a
single woman, Plaintiff,

v.

PHELPS DODGE HIDALGO SMELTER,
INC., a Delaware corporation; Thurman
Shannon and Elaine Shannon, husband
and wife, Defendants.

No. CIV 96–785 PHX RCB.

United States District Court,
D. Arizona.

Sept. 29, 1997.

Charles Anthony Shaw, Prescott, AZ, Glynn W. Gilcrease, Jr., Tempe, AZ, for Plaintiff.

Michael D. Moberly, Ryley, Carlock & Applewhite, Phoenix, AZ, for Defendant Phelps Dodge Hidalgo Smelter, Inc.

Ronald J. Stolkin, Fennemore, Craig, Tucson, AZ, for Defendants, Shannon.

## ORDER

BROOMFIELD, Chief Judge.

Plaintiff Antonia M. Valdiviezo ("Valdiviezo") has filed a sexual harassment claim against Defendants Phelps Dodge Hidalgo Smelter, Inc. ("Phelps Dodge") and Thurman Shannon ("Shannon"). Pending before the court are Defendants' motions for summary judgment. Oral arguments were heard on Monday, July 28, 1997. At that time, the

court took the matter under advisement. The court now rules.

## I. BACKGROUND

Plaintiff Valdiviezo has been employed by Phelps Dodge since May 14, 1991. [Valdiviezo Deposition at 12, Exh. to Defendants' Statement of Facts ("DSOF")]. Upon the commencement of her employment, she received and signed for a copy of Phelps Dodge's Employee Handbook (the "Handbook"). [Valdiviezo Deposition at 95–96, Exh. 2 to Plaintiff's Statement of Facts ("PSOF")]. The receipt and acknowledgment form she signed states:

> I have received a copy of the Phelps Dodge *Hidalgo Smelter Employees Handbook,* revised January, 1991.

> I agree to read the handbook and become familiar with its contents. I also agree that I will follow the policies, procedures, rules and regulations of the Company.

[Exh. 1 to PSOF].

Among the procedures provided for in the Handbook was a multi-step "problem-solving procedure" for resolving complaints by employees. [Exh. 3 to PSOF at 33–36]. The procedure culminates in a hearing before a professional arbitrator or, in most cases, before a five person Appeal Board selected jointly by Phelps Dodge and the affected employee. [Exh. 3 to PSOF at 35]. The Handbook also provides that the problem solving procedure constitutes the "sole and exclusive procedure for the processing and resolution of any controversy, complaint, misunderstanding or dispute that may arise concerning any aspect of [the employee's] employment or termination from employment." [Exh. 3 to PSOF at 57].

On May 16, 1995, Valdiviezo reported to company management that she had been sexually harassed by her immediate supervisor, Defendant Shannon. [Valdiviezo Deposition, Exh. to DSOF at 66–67, 69]. Thereafter, Phelps Dodge investigated Valdiviezo's allegations and concluded that, while Shannon made one verbal sexual advance toward her, there was inconclusive evidence that Shannon touched her in an inappropriate manner.

[Smith Affidavit ¶¶ 6–9]. At the conclusion of its investigation, Phelps Dodge counseled Shannon, both verbally and in writing, about his conduct and advised him that any future violation of the company's Equal Employment Opportunity ("EEO") policy could result in his immediate discharge. [Smith Affidavit ¶ 10; Exh. C to Smith Affidavit]. The company also informed Valdiviezo, both verbally and in writing, of its findings. [Smith Affidavit ¶ 11; Exh. D to Smith Aff.; Valdiviezo Deposition at 83; 86–89]. Valdiviezo was dissatisfied with the company's response [Smith Affidavit ¶ 12; Valdiviezo Deposition at 89–90], and, as a result, she filed a five count complaint before this court alleging: (1) unlawful sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* and under the New Mexico Human Rights Act ("NMHRA"); (2) negligence; (3) breach of contract and of the implied covenant of good faith and fair dealing; (4) assault and battery; and (5) intentional infliction of emotional ... distress.[1]

Now, Defendants have moved for summary judgment arguing: (1) Valdiviezo is required to arbitrate her claims; (2) there was no Title VII violation; (3) Valdiviezo cannot state a § 1981 or § 1983 claim; and (4) Valdiviezo cannot state a breach of the implied covenant of good faith and fair dealing claim under New Mexico law. The parties have stipulated that the court, for now, should only consider the arbitration issue. Nevertheless, in its response, Valdiviezo conceded that she could not state a § 1981 or § 1983 claim against either defendant, a Title VII claim against Shannon or a breach of contract and breach of the implied covenant of good faith and fair dealing claim against Phelps Dodge. Accordingly, the court will grant Defendants' motion for summary judgment as to these claims, and the remainder of this order will be limited to a discussion of the arbitration issue.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue exists as to any material

---

**1.** In the "Preliminary Statement" of her complaint, Valdiviezo also alleges that Defendants' conduct violated 42 U.S.C. §§ 1981 and 1983.

fact and where the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether to grant summary judgment, the court will view the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 577, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "material fact" is any factual dispute that might affect the outcome of the case under the governing substantive law. *Id.* 477 U.S. at 248. A factual dispute is "genuine" if the evidence is such that a reasonable jury could resolve the dispute in favor of the nonmoving party. *Id.*

Moreover, the moving party is entitled to judgment as a matter of law if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need not support its motion with affidavits or other similar material negating essential elements of the nonmoving party's claim. *Id.*

Finally, a nonmoving party cannot rest upon mere allegations or denials in the pleadings or papers. *Anderson*, 477 U.S. at 250. Instead, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party's evidence is merely colorable or is not significantly probative, a court may grant summary judgment. *Id.* at 249–50 ("[T]he mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient.").

2. Defendant Shannon has moved to compel arbitration, even though he is a nonsignatory to the arbitration agreement. Under Ninth Circuit law, a nonsignatory to an arbitration agreement may require enforcement of that agreement if he is bound by the agreement under ordinary contract and agency principles. *Letizia v. Prudential*

## III. DISCUSSION

In moving for summary judgment, Defendants[2] argue that Valdiviezo was required, under the terms of the Handbook, to arbitrate her claims and that the court should enforce this arbitration agreement under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2. For her part, Valdiviezo argues (1) that the arbitration contract is unenforceable; (2) that the arbitration contract, even if enforceable, does not cover her assault and battery and intentional infliction of emotional distress claims; (3) that she did not "knowingly agree" to arbitrate her Title VII and NMHRA claims; and (4) that Defendants' "problem solving procedure" conflicts with the social policies of Title VII and NMHRA. The court will consider these arguments in turn.

### A. IS THE ARBITRATION CONTRACT ENFORCEABLE?

The FAA provides that arbitration contracts "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In determining whether there exist grounds for the revocation of the contract, the Supreme Court has held that state law is applicable "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts *generally.*" *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 1655, 134 L.Ed.2d 902 (1996) (emphasis added); *Perry v. Thomas*, 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

Here, Valdiviezo argues that under state law the arbitration agreement is unenforceable (1) because it lacks mutual assent and (2) because it lacks consideration—two legal principles which apply to contracts generally. The court considers these arguments separately.

*Bache Securities, Inc.*, 802 F.2d 1185, 1187–88 (9th Cir.1986). Shannon has argued that he is bound by the terms of the Handbook under ordinary contract and agency principles. Valdiviezo has not challenged this contention. Accordingly, the court finds that Shannon has the right to enforce the arbitration agreement.

1. Does the arbitration agreement lack mutual assent?

 To constitute a contract, under either Arizona or New Mexico law,[3] a writing must manifest mutual assent, i.e., the parties' intent to be bound. *Keith Equip. Co. v. Casa Grande Cotton Fin., Co.*, 187 Ariz. 259, 928 P.2d 683, 685 (App.1996); *Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 918 P.2d 7, 10 (1996). *See also* Restatement (Second) of Contracts §§ 17–19. Valdiviezo argues that the Handbook does not manifest mutual assent since it expressly provides that it is not a contract and that Phelps Dodge may change the terms therein at any time. Specifically, the Handbook provides:

> This employee handbook sets out policies and guidelines and is provided to you for your orientation and information. *It is not a contract of employment as to any occupational position, period of time, or any other matter, and nothing contained in it should be viewed as such. This handbook may be changed at any time should the Company deem it appropriate.* ...

[Exh. 3 to PSOF at 1] (emphasis added). In support of this argument, she cites to *Heurtebise v. Reliable Bus. Computers, Inc.*, 452 Mich. 405, 550 N.W.2d 243 (1996), *reh'g denied*, 453 Mich. 1204, 554 N.W.2d 10 (1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1311,

137 L.Ed.2d 474 (1997). In *Heurtebise*, the Michigan Supreme Court found an arbitration agreement unenforceable for lack of mutual assent because it was contained in a handbook which expressly stated that it was not a contract and which stated that the employer could modify the terms of the handbook in its sole discretion. *Id.* 550 N.W.2d at 247.

In response, Defendants argue that Valdiviezo's argument is foreclosed since she acknowledged that the Handbook is a contract when she relied on it as a basis for relief in her complaint. The court agrees. In *Moses v. Phelps Dodge Corp.*, 818 F.Supp. 1287, 1288 (D.Ariz.1993),[4] defendant sought to enforce an arbitration agreement identical to the agreement in this case. The court found that plaintiff "acknowledged the contractual nature of the Employee Handbook by relying upon it as a basis for relief ...," *id.* at 1291; the *Moses* plaintiff had argued that defendant breached the policies in that handbook. Similarly, here, in her complaint, Valdiviezo asserts that she had "certain contractual rights embodied in the Employee Handbook," that she "relied on the provisions in the employee handbook," and that the Company breached its contractual obligations to her under the terms of the Handbook. [*See* Compl. ¶¶ 58–60]. Accordingly, she relied upon the Handbook as a basis for relief, and, under *Moses*, having relied upon it, she cannot now argue that it is ... unenforceable.[5]

---

**3.** There are two possible states whose laws could apply in this case: Arizona and New Mexico. Since there is no appreciable difference between the contract laws of these states, at least as to laws regarding mutual assent and consideration, the court will defer—for now—any choice of law analysis.

**4.** Defendants also cite to *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997) in support of their argument. *Patterson*, however, is factually distinguishable.

In *Patterson*, the Eighth Circuit found that the arbitration clause was enforceable even though the handbook in which it was contained stated that it "[was] not intended to constitute a legal contract," that management had discretion to abide by the policies in the handbook, and that the terms therein were subject to modifications by the employer. 113 F.3d at 834. The Eighth Circuit reasoned that, because the arbitration clause was contained in a separate page detachable from the handbook, because the language in that arbitration clause and the acknowledgement form for the arbitration agreement clearly indicated that arbitration was a binding procedure,

and because the employee was required to sign that separate page, the arbitration clause was a separate and enforceable contract.

Here, by contrast, the facts are much less compelling. Phelps Dodge employees are not required to sign a separate acknowledgment form for the arbitration agreement. The acknowledgment form for the Handbook does not refer specifically to the arbitration contract. And the arbitration agreement is not a separate detachable page from the rest of the Handbook. Accordingly, the court finds that *Patterson* is not persuasive authority.

**5.** *See also Thomas v. Garrett Corp.*, 744 F.Supp. 199 (D.Ariz.1989), *aff'd* 904 F.2d 41, 1990 WL 71468 (9th Cir.1990), *cert. denied*, 498 U.S. 982, 111 S.Ct. 513, 112 L.Ed.2d 525 (1990). In *Thomas*, plaintiff argued that defendant's employee manual created an implied-in-fact contract and that defendant breached the contract by terminating him. *Id.* at 200. The court disagreed, finding that the handbook did not create a contract. *Id.* at 200–203. In the alternative, it held that, if the handbook had created a contract,

Valdiviezo's attempt to distinguish *Moses* is unconvincing. Valdiviezo argues that *Moses* is distinguishable because the plaintiff therein does not raise the lack of mutual assent argument she raises here and because the *Moses* court only dealt with the arbitrability of plaintiff's breach of contract claim, not the arbitrability of her tort claims. These distinctions, however, are insignificant. In *Moses,* the court broadly held that a plaintiff cannot, on the one hand, rely on a contract to assert her claims and, on the other hand, argue that the contract is unenforceable. It would seem that the *Moses* holding applies regardless of whether the plaintiff argues that the contract is unenforceable on the basis of a lack of mutual assent or on any other basis. Similarly, as long as the plaintiff relies on the contract to articulate a claim, i.e., as long as plaintiff alleges a breach of contract claim, the *Moses* holding would seem to apply regardless of whether the plaintiff alleges tort claims in addition to her contract claim.

Nonetheless, even if *Moses* is factually distinguishable, its holding is well-settled and is based on the concept of estoppel. Several courts, both federal and state, have held that a party cannot reap the benefits of a contract and then seek to avoid the corresponding burdens. *See, e.g., Hudson Motors Partnership v. Crest Leasing Enter., Inc.,* 845 F.Supp. 969 (E.D.N.Y.1994); *McDonald's Corp. v. Robert A. Makin, Inc.,* 653 F.Supp. 401 (W.D.N.Y.1986); *X.L.O. Concrete Corp. v. Rivergate Corp.,* 83 N.Y.2d 513, 611 N.Y.S.2d 786, 634 N.E.2d 158 (1994); *Shephard v. Hunter,* 508 S.W.2d 234 (Mo.App. 1974); *Magenheim v. Bd. of Educ. of the Sch. Dist. of Riverview Gardens,* 347 S.W.2d 409 (Mo.App.1961); *Indus. Comm'n v. Arizona Power Co.,* 37 Ariz. 425, 295 P. 305 (1931), *reh'g denied* 38 Ariz. 44, 297 P. 452 (1931). By arguing, on the one hand, that the terms in the Handbook create a contract and that Phelps Dodge breached the terms of that contract while arguing, on the other hand, that the arbitration clause contained in the Handbook is unenforceable for lack of mutual assent, Valdiviezo seeks to reap the benefits of the contract while avoiding its burdens. Under the doctrine of estoppel, she is foreclosed from doing so.

it would have bound plaintiff to arbitrate his

Valdiviezo's reliance on *Heurtebise* does not affect this ruling. Unlike Valdiviezo, the plaintiff in *Heurtebise* did not allege a breach of contract claim. 452 Mich. 405, 550 N.W.2d 243 (1996). Accordingly, the plaintiff therein was not estopped from arguing that the handbook—and the arbitration agreement therein—were unenforceable for lack of mutual assent.

■■■ Finally, Valdiviezo's abandonment of her breach of contract claim in her response also does not affect this ruling. Under Ninth Circuit law, a statement in a complaint serves as a judicial admission. *See Sicor Ltd. v. Cetus Corp.,* 51 F.3d 848 (9th Cir.1995); *American Title Ins. Co. v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir.1988). Accordingly, Valdiviezo's assertions in her complaint that she had "certain contractual rights embodied in the Employee Handbook," that she "relied on the provisions in the employee handbook," and that the Company breached its contractual obligations to her under the terms of the Handbook constitute a judicial admission that the Handbook is an enforceable contract. [*See* Compl. ¶¶ 58–60]. Where, however, the party making the judicial admission explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation "due weight." *Sicor,* 51 F.3d at 860. Here, in her response, Valdiviezo asserts that she was mistaken in arguing that the Handbook is not an enforceable contract, and she moves to withdraw her breach of contract and breach of the implied covenant of good faith and fair dealing claims. [Pl. Resp. at 2]. She bases her changed belief on the fact that (1) the Handbook itself says it is not a contract and (2) Phelps Dodge's answer denied that the Handbook is a contract. However, Valdiviezo had the Handbook since the commencement of her employment, and she received Phelps Dodge's answer on or shortly after May 24, 1996. Yet she never indicated that she changed her belief as to the enforceability of the Handbook as a contract until a year after she received the answer and only after Defendants moved to enforce the arbitration clause in that Handbook. Indeed, to date, Valdiviezo has not moved to amend her com-

claims. *Id.* at 203.

plaint. In light of these facts, the court does not find credible Valdiviezo's claim that her judicial admissions were made in error. It would seem that Valdiviezo has withdrawn her admissions, not because she believes they are in error, but rather as a stratagem to avoid arbitration.[6]

### 2. Does the arbitration agreement lack consideration?

■■■ Valdiviezo further argues that the contract is unenforceable for lack of consideration. Under either New Mexico or Arizona law, a contract, to be legally enforceable, must be supported by consideration. *Garcia,* 918 P.2d at 10; *Rogus v. Lords,* 166 Ariz. 600, 804 P.2d 133, 135 (App.1991). *See also* Restatement (Second) of Contracts § 17(1). A contract is not supported by consideration where one of the parties has made an illusory promise, i.e., a promise that leaves the choice of performance entirely to the promisor. *Bd. of Educ., Gadsden Indep. School Dist. No. 16 v. James Hamilton Constr. Co.,* 119 N.M. 415, 891 P.2d 556, 561 (1994), *cert. denied,* 119 N.M. 354, 890 P.2d 807 (1995); *Allen D. Shadron, Inc. v. Cole,* 101 Ariz. 122, 416 P.2d 555, 556 (1966). *See also* Restatement (Second) of Contracts § 77. Valdiviezo argues that Phelps Dodge's agreement to arbitrate is an illusory promise since Phelps Dodge could choose either to have the matter heard before an Appeals Board or a professional arbitrator. The Handbook provides:

> If the subject of your complaint is such that the Company believes that the experience and skills of a professional arbitrator are required, the complaint will be decided

by an arbitrator rather than being submitted to the Appeal Board.

[Exh. 3 to PSOF at 35].

In support of her argument, Valdiviezo cites to *Stevens/Leinweber/Sullens, Inc. v. Holm Dev. and Management, Inc.,* 165 Ariz. 25, 795 P.2d 1308 (App.1990).[7] Therein, plaintiff and defendant had entered into a construction contract which contained an arbitration agreement. *Id.* 795 P.2d at 1310. The arbitration agreement gave defendant the unilateral option of submitting the dispute to arbitration or foregoing arbitration and filing a lawsuit. *Id.* The agreement also gave defendant the option of reconsidering its choice of dispute resolution until final judgment was rendered. *Id.* The Arizona Court of Appeals held that this arbitration agreement was unenforceable for lack of consideration because there was no mutual obligation to submit the dispute to arbitration. *Id.* at 1313. It reasoned that, even though there was a strong policy favoring arbitration, the arbitration agreement in that case would not have promoted the public policy favoring arbitration, since defendant could choose between arbitration and litigation and since defendant could change its mind until the issuance of a final judgment. *Id.*

This reasoning in *Stevens* illustrates why it is factually distinguishable from the present case. The concern of the *Stevens* court was not that defendant had a unilateral option; rather, the concern was that defendant had the unilateral option to choose between litigation and arbitration. Here, by contrast, the option available to Phelps Dodge is not between litigation and arbitration, but rather between two alternative dispute resolution

---

**6.** These facts distinguish the present case from *Sicor.* In *Sicor,* there existed an ambiguity in plaintiff's pleading; construing it one way would have led to the dismissal of plaintiff's complaint while construing it in a different way would not. In a subsequent pleading, plaintiff attempted to correct the ambiguity by explaining what it truly meant. The district court did not accord its explanation due weight, and the Ninth Circuit reversed. 51 F.3d at 858–60. Here by contrast, there exists no such ambiguity. There is a clear contradiction between the stance Valdiviezo takes in her complaint and in her response, and it is clear that Valdiviezo is attempting to withdraw her judicial admission solely as a means of avoiding arbitration.

**7.** *Stevens* involved the Arizona Uniform Arbitration Act (A.R.S. § 12–1501) rather than the FAA. However, as the *Stevens* court and Valdiviezo notes, the statutes are virtually identical. 795 P.2d at 1311 n. 3. The Arizona statute provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.

A.R.S. § 12–1501.

mechanisms—i.e., between the Appeals Board and a professional arbitrator, both arbitral-type fora.

Further, Valdiviezo has not shown why Phelps Dodge's option to choose between an arbitrator and an Appeal Board is an illusory promise. The Restatement provides the following definition of an illusory promise:

A promise or apparent promise is not consideration if by its terms the promisor or purported promisor reserves a choice of alternative performances *unless*

(a) each alternative performances would have been consideration if it alone had been bargained for . . .

Restatement (Second) of Contracts § 77 (emphasis added). Here, Valdiviezo has not argued nor explained why the alternative performances available to Phelps Dodge (i.e., a hearing before an arbitrator or a hearing before the Appeal Board) would not have been consideration if it alone had been bargained for. Since the party opposing the arbitration bears the burden of proof[8] and since Valdiviezo fails to meet this burden, her argument fails.

Finally, the arguments in the preceding section apply with equal force here. Valdiviezo is estopped from arguing that the Handbook is unenforceable for lack of consideration when she has relied upon it as a basis for relief. *See* Section III.A.1.

. . .

### B. DOES THE ARBITRATION CONTRACT COVER VALDIVIEZO'S ASSAULT AND BATTERY AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS?

■ Notwithstanding the federal policy favoring it, arbitration is a matter of contract, and the parties cannot be required to arbitrate any dispute which he has not agreed to arbitrate. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). That is, the court cannot expand the parties' agreement to arbitrate even in the interest of

preventing piecemeal litigation. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that the Federal Arbitration Act *"requires* piecemeal resolution when necessary to give effect to an arbitration agreement") (emphasis in original).

■ Here, citing *Tracer Research v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292 (9th Cir.1994), *cert. dismissed,* 515 U.S. 1187, 116 S.Ct. 37, 132 L.Ed.2d 917 (1995), Valdiviezo argues that, even if the Handbook required arbitration of her Title VII and NMHRA claims, it does not require arbitration of her tort claims. In *Tracer,* Tracer Research ("Tracer") and National Environmental Services Co. ("NESC") entered into a licensing agreement which provided that "[i]n the event any controversy or claim arising out of this *Agreement* cannot be settled by parties [], such controversy or claim shall be settled by arbitration." *Id.* at 1295 (emphasis added). Tracer subsequently filed suit against NESC alleging that the latter party had misappropriated its trade secrets. NESC filed a motion to compel arbitration which the district court granted. Subsequently, the Ninth Circuit reversed, reasoning that the arbitration agreement only required arbitration of controversies "arising out of" the agreement, not controversies "related to" the agreement (i.e., controversies that would not have occurred "but for" the agreement). That is, the Ninth Circuit held that, while, under the arbitration agreement, Tracer agreed to arbitrate a breach of the licensing agreement claim, it did not agree to arbitrate tort claims like its misappropriation of trade secret claim. Based on *Tracer,* Valdiviezo argues that, even if she agreed to arbitrate her statutory claims, she did not agree to arbitrate her tort claims. Valdiviezo is incorrect.

*Tracer* is factually distinguishable from this case. Unlike the arbitration agreement in *Tracer,* the arbitration agreement here did not merely require arbitration of disputes arising from the employment *contract;* it

---

**8.** *Cf. Mago v. Shearson Lehman Hutton Inc.*, 956 F.2d 932, 935 (9th Cir.1992) (holding that a party opposing arbitration bears the burden of showing that Congress intended to preclude a waiver of judicial remedies for the statutory

rights at issue); *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1412 (9th Cir.1990) (holding that party seeking to prove waiver of right to arbitrate bears heavy burden of proof).

required arbitration of all disputes arising from any aspect of Valdiviezo's employment or termination of employment. · [*See* Exh. 3 to PSOF at 57]. Certainly, Shannon's alleged conduct which gives rise to Valdiviezo's assault and battery and IIED claims and which occurred during the course of Valdiviezo's employment relationship with Phelps Dodge comes within the scope of this broad language.[9]

In *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163 (8th Cir.1984), the Eighth Circuit noted the very same distinction this court makes. Therein, the parties agreed to arbitrate disputes "arising out of employment or termination of employment." Based on this language, the Eighth Circuit concluded that the parties had agreed to arbitrate tort as well as contract claims, since the agreement did not limit arbitration to controversies arising from employment or termination of employment *contract. Id.* at 1167. *See also Zolezzi v. Dean Witter Reynolds, Inc.*, 789 F.2d 1447, 1449 (9th Cir.1986) ("express exclusion of tort claims in a broadly worded agreement is required [to render them arbitrable]").

The court concludes, therefore, that Valdiviezo did agree to arbitrate her assault and battery and IIED claims.

## C. DID VALDIVIEZO KNOWINGLY AGREE TO ARBITRATE HER TITLE VII AND NEW MEXICO HUMAN RIGHTS ACT CLAIMS?

■ The Ninth Circuit has held that a plaintiff cannot waive the comprehensive statutory rights, remedies and procedural protections prescribed in Title VII and analogous state statutes (like NMHRA) unless the employee "knowingly agreed" to the arbitration of those claims. *Prudential Ins. Co. of America v. Lai*, 42 F.3d 1299, 1305 (9th

Cir.1994), cert. denied, 516 U.S. 812, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995). Here, citing to *Lai*, Valdiviezo argues that she did not "knowingly agree" to the arbitration of her Title VII and NMHRA claims. She contends that she could not have "knowingly agreed" since the acknowledgment form she signed did not refer to arbitration, much less the arbitration of employment disputes. The court disagrees.

*Lai* is factually distinguishable from the present case. In *Lai*, plaintiffs signed forms requiring them "to arbitrate any dispute, claim or controversy that ... is required to be arbitrated under the rules, constitutions or bylaws of the organizations with which [they] register," *id.* at 1301; the form did not refer to the arbitration of employment disputes. Further, plaintiffs allege that, when they signed the forms, they were told only that they were applying to take a test which was required for their employment and that they were not given an opportunity to read the forms. *Id.* Arbitration was never mentioned, and plaintiffs were never given a copy of the manual which contained the actual terms of the arbitration agreement. *Id.* Based on these facts, the Ninth Circuit found that plaintiffs did not "knowingly agree" to arbitrate their Title VII claims.

By contrast, in this case, the Handbook clearly refers to the arbitration of employment disputes; it provides that the problem solving procedure is the "sole and exclusive procedure for the processing and resolution of any controversy, complaint, misunderstanding or dispute that may arise *concerning any aspect of your employment or termination from employment.*" [*See* Exh. 3 to PSOF at 57] (emphasis added). Further, while the acknowledgement form that Valdiviezo signed does not refer to the arbitration of employment disputes,[10] it is an acknowl-

---

9. In her response, Valdiviezo argues that the arbitration agreement does not cover her tort claims since her claims, assault and battery and IIED, would constitute torts whether or not they occurred within the employment relationship. However, regardless of whether these torts would constitute torts if they occurred outside the employment relationship, Valdiviezo has alleged that they occurred *during* the employment relationship. And, because the arbitration contract requires arbitration of any dispute arising out of the employment relationship and because these torts arose out of the employment relation-

ship, they are covered by the arbitration agreement.

10. During oral arguments, Defendants cited the court to a recently decided Ninth Circuit opinion, *Nelson v. Cyprus Bagdad Copper Corporation*, 119 F.3d 756 (9th Cir.1997) and argued that it was factually distinguishable from the present case. The court agrees. In *Nelson*, the Ninth Circuit held that plaintiff had not knowingly waived his statutory rights to a judicial forum. *Id.* at 763. As Defendants note, however, the Ninth Circuit in that case focused on the fact that plaintiff had

edgment that Valdiviezo has received a copy of the Handbook which does refer to the arbitration of employment disputes, that she will read the terms contained therein, and that she agrees to those terms, including the terms of the problem solving procedure, [Exh. 2 to PSOF]. Finally, unlike the plaintiffs' allegations in *Lai*, there is no allegation in this case that, when Valdiviezo signed the acknowledgement form, she was told it was something other than what it was, that she was never given an opportunity to read the Handbook prior to signing the acknowledgment form, and that she never received a copy of the Handbook which contained the terms of the problem solving procedure. Accordingly, the holding in *Lai* is inapposite.

To the extent Valdiviezo is arguing that she cannot have "knowingly agreed" to arbitrate her Title VII and NMHRA claims unless the arbitration agreement refers to those claims specifically, her argument also fails. Her argument has been rejected by at least one court. In *Golenia v. Bob Baker Toyota*, 915 F.Supp. 201 (S.D.Cal.1996), the court reasoned:

> The plaintiff would have the Court read these decisions as holding that the arbitration clause must specifically name the statute, or describe with particularity the class of statutes—e.g., "civil rights statutes"—whose procedures are to be waived in favor of arbitration. This is not required. *Prudential* emphasized the lack of reference to "employment disputes." The language of the clause in this case refers to arbitration [sic] "any dispute or controversy . . . arising from, related to, or having any connection with my seeking employment with, employment by, or other association with, Company . . . " More cannot be reasonably required in view of the Supreme Court's rule that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation or [sic] waiver, delay, or a like defense to arbitra-

bility." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24–25, 103 S.Ct. at 941–42.

*Id.* at 205. The *Golenia* court's reasoning is persuasive. As noted by the *Golenia* court, the *Lai* court implied that a plaintiff knowingly agrees to the arbitration of her Title VII claims if she signs an arbitration agreement which required arbitration of "employment disputes" (barring of course any defense of fraud or misrepresentation). 42 F.3d at 1305. Here, the Handbook required the use of the problem solving procedure for the resolution of any dispute "concerning any aspect of [the employee's] employment or termination from employment." [*See* Exh. 3 to PSOF at 57]. Title VII and NMHRA claims clearly fall within the scope of "any dispute concerning any aspect of [] employment." Accordingly, by agreeing to follow the procedures (including the problem solving procedure) contained in the Handbook [*see* Exh. 2 to PSOF], Valdiviezo "knowingly agreed" to arbitrate her Title VII and NMHRA claims.

D. DOES PHELPS DODGE'S "PROBLEM SOLVING PROCEDURE" CONFLICT WITH THE SOCIAL POLICIES UNDERLYING TITLE VII AND NMHRA?

In determining whether a particular type of claim is arbitrable, the court must consider whether "Congress intended to preclude a waiver of judicial remedies for [that claim]." *Shearson/American Exp. Inc. v. McMahon*, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 934 (9th Cir.1992). If such an intention exists, it will be deductible from the text of statute, its legislative history, or an "inherent conflict" between arbitration and the underlying purposes of the statute from which the claim arises. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27–28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991);

---

signed an acknowledgment form requiring him only to read and understand an employee handbook which contained an arbitration clause; unlike the form here, the acknowledgment form in *Nelson* did not require plaintiff to agree to the terms in the handbook. *See id.* at 763. While the

*Nelson* court also noted that the acknowledgment form did not notify plaintiff that the handbook contained an arbitration clause, *id.* at 761, that was not the focus and basis of its opinion, *see id.* at 762–63. The court, therefore, construes that language as dicta.

*Mago,* 956 F.2d at 934. As to Title VII claims, the Ninth Circuit has concluded that no such intention exists; that is, it has concluded that no inherent conflict exists between arbitration and the underlying purposes of Title VII and, therefore, that Title VII claims are arbitrable. *See Lai,* 42 F.3d at 1303; *Mago,* 956 F.2d at 935. Similarly, several courts have concluded that there is no inherent conflict between arbitration and the policies underlying state statutory claims like Valdiviezo's NMHRA claim. *See, e.g., Olde Discount Corp. v. Tupman,* 1 F.3d 202 (3d Cir.1993), *cert. denied,* 510 U.S. 1065, 114 S.Ct. 741, 126 L.Ed.2d 704 (1994) (noting that "there is no longer any doubt that [state] statutory claims are arbitrable"); *Nazon v. Shearson Lehman Bros., Inc.,* 832 F.Supp. 1540, 1541–42 (S.D.Fla.1993) (holding that plaintiff's Florida Human Rights Act claim is arbitrable); *Kaliden v. Shearson Lehman Hutton, Inc.,* 789 F.Supp. 179, 183–84 (W.D.Pa.1991) (holding that plaintiff's Pennsylvania Human Relations Act claim is arbitrable); *Steck v. Smith Barney, Harris Upham & Co., Inc.,* 661 F.Supp. 543, 547–48 (D.N.J.1987) (holding that plaintiff's New Jersey Law Against Discrimination claim is arbitrable).

Nevertheless, Valdiviezo argues that these cases are not binding on this case because there is a strong possibility her claims will be decided before an Appeal Board rather than an arbitrator.[11] She argues that, while there may not be an inherent conflict between arbitration and the policies underlying Title VII and NMHRA, there is an inherent conflict between an Appeal Board hearing and Title VII/NMHRA policies. Her argument hinges of course on whether there exist differences between arbitration and an Appeal Board hearing, and, more importantly, on whether these differences would prevent her from effectively vindicating her statutory rights in a non-judicial forum. *See Gilmer,* 500 U.S. at 28 (holding that, so long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral fo-

rum, there will be no inherent conflict between arbitration and the policies underlying the statute). Valdiviezo focuses on three differences between an arbitrator and the Appeal Board: (1) unlike an arbitrator, members of the Appeal Board are not skilled in procedure, evidence or substantive law; (2) unlike an arbitrator, employees may be biased because they obtain their sole means of livelihood from the employer; and (3) unlike decisions by the arbitrator, decisions by the Appeals Board are not subject to judicial review under 9 U.S.C. § 10.

Before addressing Valdiviezo's arguments, the court begins with the Supreme Court's admonition that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24. However, the Ninth Circuit has also indicated that the public policy of protecting victims of sexual discrimination and harassment through the provisions of Title VII and analogous state statutes "is a policy that is at least as strong as our public policy in favor of arbitration." *Lai,* 42 F.3d at 1305. With these two conflicting interests in mind, the court considers the merits of Valdiviezo's arguments.

■ Valdiviezo first argues that the Board members' lack of knowledge about substantive law, evidence and procedure will prevent her from effectively litigating her claims. The court disagrees. The Handbook provides that members of the Appeal Board are selected from a pre-existing list of employees. The Handbook does not indicate that employees must have certain legal qualifications in order to serve on the board. Accordingly, Valdiviezo is probably correct in assuming that the members of the board, unlike many professional arbitrators, will not be knowledgeable about evidence, procedure or substantive law.[12] However, this fact alone does not mean that Valdiviezo cannot effectively litigate her claim, since if she

---

11. Defendants do not dispute that Valdiviezo's claims are likely to be heard before an Appeal Board rather than an arbitrator. Further, the Handbook itself indicates that "[m]ost complaints ... are heard by the Appeal Board." [Exh. 3 to PSOF at 35].

12. Of course this assumption on Valdiviezo's part would be inaccurate for the many professional arbitrators who are as knowledgeable about evidence, procedure or substantive law as any lay person but who are chosen to be arbitrators because of their professional standing or their knowledge of the area of inquiry in dispute.

were to try the case in a judicial forum before a jury, she is likely to get decision-makers equally ignorant of evidence, procedure, or substantive law. There is nothing in the Handbook which forecloses her from submitting briefs to the members of the board instructing them on the pertinent law and on how to evaluate the evidence just as a judge would instruct a jury about the pertinent law before the jury begins deliberations.

The court finds a closer question whether the fact that members of the board will be present employees of Phelps Dodge would make them potentially biased in its favor. While a professional arbitrator would also be paid by Phelps Dodge, s/he is less likely than an employee to rule in Phelps Dodge's favor because of this financial relationship since, unlike the board employee, s/he does not obtain his/her sole means of livelihood from Phelps Dodge. On the other hand, this country has a tradition of labor union representation where conflict between management and workers frequently exists. Workers have little hesitancy to challenge their own employers when they believe their view is correct. Indeed, shop stewards or worker representatives customarily come from the ranks of the employees. This tradition strongly militates against pro-employer bias.

While the court is mindful of the Supreme Court's admonition in *Gilmer* that courts should not presume bias on the part of an arbitral body, the court does not lightly disregard Plaintiff's view that there is less of a check against bias in this case than there was in *Gilmer*. 500 U.S. at 30–31. In *Gilmer*, the Court observed that there were sufficient procedures in defendant's arbitration rules as well as in the FAA (9 U.S.C. § 10) to guard against potential bias. *Id.* at 30. In *Gilmer*, defendant's arbitration rules required that parties be informed of the employment histories of arbitrators and that they be allowed to make further inquiries into the arbitrator's backgrounds. *Id.* In addition, each party was allowed one peremptory challenge and

unlimited challenges for cause. *Id.* Moreover, the arbitrators were required to disclose any circumstances which might preclude them from rendering an objective and impartial determination. *Id.* By contrast, in this case, the Handbook provides no such checks against bias.

■ Nevertheless, the *Gilmer* court also pointed to judicial review under 9 U.S.C. § 10(b) as a check against arbitrator bias. That section provides that courts may overturn arbitration decisions "[w]here there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(b). Valdiviezo argues, however, that, because 9 U.S.C. § 10(b) refers only to judicial review of awards by "arbitrators" and because the Board members are not arbitrators, 9 U.S.C. § 10(b) will not be a check against biased awards in this case. The court disagrees. Valdiviezo has cited to no caselaw which precludes courts from reviewing awards by jointemployer-employee-selected-boards under 9 U.S.C. § 10(b). By contrast, the court has found at least one circuit which has applied 9 U.S.C. § 10(b) to a joint labor-management board award. *See Local 814, Intern. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. J & B Systems Installers and Moving, Inc.,* 878 F.2d 38 (2d Cir. 1989). Moreover, as Defendants note, courts have consistently held that joint labor-management committee awards are reviewed under the same standards as arbitration awards.[13] *See, e.g., Gen. Drivers, Warehousemen & Helpers Local Union No. 89 v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *Teamsters Local Union No. 30 v. Helms Exp., Inc.,* 591 F.2d 211 (3rd Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979); *Bieski v. Eastern Automobile Forwarding Co.,* 396 F.2d 32 (3d Cir.1968). In *Teamsters,* the Third Circuit noted:

---

**13.** During oral arguments, Valdiviezo argued that joint labor-management committees are distinct from the Appeal Board and that, traditionally, more deference is given to the labor-management committee because it is the product of a collective bargaining agreement where the terms are negotiated vigorously by labor and management. However, Valdiviezo cites to no authority

which has recognized such a distinction on such a basis. Further, Valdiviezo's reasoning is flawed. If anything, courts traditionally give less deference to collective bargaining agreements which require arbitration because of the tension between collective representation and individual statutory rights. *Gilmer, 500 U.S. at 33–35.*

It is not arbitration per se that federal policy favors, but rather a final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration.

591 F.2d at 216. Similarly, here, having agreed to the terms in the Handbook which provide for resolution of conflicts by either the Appeal Board or an arbitrator, Valdiviezo should not now be permitted to argue that the former dispute resolution procedure is inadequate. Finally, the court notes that its ruling requiring Valdiviezo to resolve her disputes through a means other than arbitration is not inconsistent with Title VII policy. Section 118 of the Civil Rights Act of 1991 states:

Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials and arbitration is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title.

§ 118 of Pub.L. 102–166, set forth in the notes following 42 U.S.C. § 1981 (Supp.1994).

For these reasons, the court grants Defendants' motion to compel arbitration of Valdiviezo's Title VII and NMHRA claims.[14]

IT IS ORDERED granting Defendants' motion for summary judgment of Valdiviezo's §§ 1981 and 1983 claims (docs. 28 & 30).

IT IS ORDERED granting Defendants' motion for summary judgment of Valdiviezo's breach of contract and breach of the implied covenant of good faith and fair dealing claims (docs. 28 & 30).

IT IS ORDERED granting Defendants' motion for summary judgment on Plaintiff's

assault and battery, IIED, Title VII and NMHRA claims on the basis that Plaintiff is required to arbitrate these claims (doc. 28 & 30). The clerk of the court is directed to terminate the case.

---

14. Valdiviezo also argues that Phelps Dodge's problem solving procedure conflicts with Title VII and NMHRA policy because the procedure voids any decision by the Appeal Board or arbitrator which is in conflict with Phelps Dodge's policies. [See Exh. 3 to PSOF at 36]. The court disagrees. First, Valdiviezo has not argued that Phelps Dodge's policies *are* in conflict with Title VII or NMHRA. The Handbook indicates that Phelps Dodge has a policy prohibiting discrimination and harassment. [See Exh. 3 to PSOF at 6–7]. This policy seems consonant rather than inconsistent with the policy underlying Title VII and NMHRA. Second, the Supreme Court has indicated that plaintiffs who arbitrate their statutory claims do not forego the substantive rights afforded by statutes. *Mitsubishi Motors*, 473 U.S. at 628. Accordingly, to the extent any award by the Appeal Board or the arbitrator denies such substantive rights, it is of course subject to challenge.